UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JOSEPH FORINO,

                        Petitioner,                   **MEMORANDUM & ORDER**
                                                      10-CV-5980 (MKB)

        v.

WILLIAM LEE,

                        Respondent.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Petitioner Joseph Forino, proceeding *pro se*, brings the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights. (Pet. for Writ of Habeas Corpus ("Pet."), Docket Entry No. 1.) Petitioner's claims arise from a 2009 judgment of conviction entered in the New York State Supreme Court, Nassau County, following a jury verdict convicting Petitioner of attempted burglary in the second degree. (*Id*. at 2.) Petitioner was adjudicated a persistent, violent felony offender and sentenced to an indeterminate prison term of twelve years-to-life. (*Id*. at 1–2.) Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department (the "Appellate Division"). By decision dated September 22, 2009, the Appellate Division unanimously affirmed Petitioner's conviction. *People v. Forino*, 887 N.Y.S. 2d 114 (App. Div. 2009). On December 14, 2009, the New York Court of Appeals denied Petitioner's application for leave to appeal. *People v. Forino*, 13 N.Y.3d 907 (2009). Petitioner timely filed the instant petition for a writ of habeas corpus on December 20, 2010, and

subsequently filed an amended petition on May 21, 2012.[1]  (Pet.; Am. Pet. for Writ of Habeas

Corpus ("Am. Pet."), Docket Entry No. 22.)  Petitioner asserts that he was: (1) denied his right to

an impartial jury by the state court's improper denial of his for-cause challenges to prospective

jurors; (2) denied due process and the right to a fair trial by the state court's failure to issue or

repeat instructions concerning circumstantial evidence, a renunciation defense and *Molineux*[2]

evidence; (3) denied due process and the right to a fair trial by the state court's dismissal of a

juror during trial; (4) denied his right to an impartial jury by the state court's failure to hold a

preclusion and *Ventimiglia*[3] hearing before admitting certain evidence; and (5) denied due

process and the right to a fair trial because the evidence at trial was legally insufficient and the

verdict was against the weight of the evidence.  (Am. Pet. at 15–16.)[4]  For the reasons set forth

below, the amended petition is denied.

---

[1]  In the petition and the amended petition, under each of the four grounds asserted as a
basis for relief, Petitioner wrote "See Attached Table of Contents."  (*See* Pet. 5–11; Am. Pet. 5–
11.)  Petitioner annexed a copy of the table of contents to his Appellate Division brief, which
lists five distinct claims.  (Pet. 15–16; Am. Pet. 15–16.)  Though it is unclear whether Petitioner
intends to raise all five claims listed in the table of contents, the Court is mindful that "[a]
document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully
pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Accordingly, the Court interprets the petition "to
raise the strongest arguments that [it] suggest[s]" and will address all five claims.  *Triestman v.
Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006).

[2]  *See People v. Molineux*, 168 N.Y. 264, 293 (1901) (holding that evidence of other
crimes, wrongs or bad acts may not be admitted as propensity evidence, but may be admitted for
other purposes, such as to establish motive, opportunity, intent, preparation, identity or absence
of mistake).

[3]  *See People v. Ventimiglia*, 52 N.Y.2d 350, 362 (1981) (holding that the government is
required to obtain advance judicial approval for the admission of other crimes/bad acts
evidence).

[4]  Because the amended petition is not consecutively paginated, all citations to pages of
the motion refer to the electronic document filing system pagination.  Neither the petition nor the

## I. Background

### a. Incident and arrest

On September 1, 2005, a resident of Oceanside, Nassau County observed Petitioner as he tried to open the front doors, looked into windows and walked into the yards of a number of houses in a residential neighborhood. (T. 313–17, 319–36.)[5] After following Petitioner, the resident called the police and identified Petitioner to the responding officer. (T. 326–28.) The officer subsequently observed Petitioner stop at the home of Robert and Marie Paul, put on a pair of gloves, open the gate to the side yard and approach the locked sliding glass doors on the side of the house. (T. 434–37, 449, 484–85.) Petitioner opened the exterior screen door and tugged repeatedly on the interior sliding glass door. (T. 438–39, 454–55, 485.) Petitioner failed to gain entry to the house and returned to the street, where he was arrested by the responding officer. (T. 442–43.) Petitioner was charged with attempted burglary in the second degree. (Am. Pet. 1.)

### b. Jury selection

During voir dire, defense counsel's objections to four prospective jurors "for cause" were each denied and defense counsel used peremptory challenges to strike the first three prospective jurors but could not exercise a peremptory challenge as to the fourth juror because he had exhausted his peremptory challenges at that point. (T. 260–61.) The fourth juror indicated that he was familiar with the neighborhood where the crime took place, and that it might be possible

---

amended petition sets forth arguments in support of the relief sought. However, on July 13, 2012, Petitioner filed a Traverse and Memorandum of Law (("Pet. Mem."), Docket Entry No. 23), to which the court refers for Petitioner's legal arguments.

[5] "T." refers to the transcript of Petitioner's jury trial held in New York Supreme Court, Nassau County from February 21 to March 1, 2007. (Docket Entry Nos. 12-3, 12-4, 12-5, 12-6, 12-7, 12-8, 12-9.) "S." refers to the transcript of Petitioner's sentencing proceedings. (Docket Entry No. 12-10.)

that he would recognize one of the testifying police officers by sight and that some of the names sounded familiar. (T. 252–54; 260.) When asked if his knowledge of the neighborhood or potential familiarity with police officers would prevent him from sitting as a fair and impartial juror, the juror replied, "I don't think so." (T. 254.) After indicating that he would accept or reject police testimony as he would any other witness, defense counsel asked the juror whether he would give a police officer he knew "a little more credence" than one he did not know. (*Id.*) The juror replied, "It's possible." (*Id.*) The trial judge denied defense counsel's request to strike the juror "for cause" based on these answers. (T. 260–61.) The juror was seated on the jury. (T. 260–61.) Counsel continued voir dire until the trial judge indicated "time's up" right after defense counsel questioned the prospective first alternate juror about her familiarity with the neighborhood where the crime occurred. (T. 255–56.) Defense counsel asked for "a little more time" but the trial judge denied the request. (T. 256.) Defense counsel did not object to that juror's selection as an alternate juror. (T. 262.)

### c. Trial

On the first day of trial one of the selected jurors told the court that she had been in a car accident that day and requested a special chair. (T. 271.) The juror asked to go home early that day, but the trial court persuaded her to stay for the full day. (T. 418.) The next day, the juror called and told the court clerk that she was in pain and that she had an appointment to see a doctor later that day. (T. 417, 419.) Over Petitioner's objection, the juror was excused and replaced with an alternate juror. (T. 426–27.)

At trial, the responding officer testified that he observed Petitioner walk up to a house, put on a pair of gloves, open a screen door, go into the side yard and attempt to open a locked glass door. (T. 434–37, 449, 484–85.) An eyewitness testified that she observed Petitioner

looking into her neighbor's windows and trying to open doors prior to committing the underlying offense. (T. 313–17.) Defense counsel objected to the inclusion of this evidence without a *Molineux* hearing but the trial judge overruled the objection. (T. 695–96.) Defense counsel also objected to testimony by the same eyewitness concerning the eyewitness' out of court identification of Petitioner because he was not given notice of the identification. (T. 370–73, 401–15.)

Prior to summation, Defense counsel requested jury charges on circumstantial evidence, renunciation and *Molineux* evidence. (T. 681–82, 686–89, 694–95, 697–98.) Defense counsel argued that the circumstantial evidence charge was proper for the following reason:

> [T]here's no direct evidence of attempted burglary meaning there is no evidence whatsoever of any intent to commit a crime therein and there really isn't any direct evidence of the fact that he attempted to enter unlawfully knowing more than as I said that he really trespassed on the open area.

(T. 697–98.) Defense counsel argued that the renunciation charge was proper because the responding officer testified that Petitioner "went up to the door and then left . . . the property solely" establishing that Petitioner renunciated the crime. (T. 682.) Defense counsel argued that a *Molineux* charge would be proper to "minimize" the *Molineux* evidence which he maintained was improperly admitted without a hearing. (T. 681.) The trial court denied each request. (T. 695–98.)

### d. Jury verdict and sentence

On March 1, 2007, the jury convicted Petitioner of attempted burglary. (T. 777–781.) Petitioner was adjudicated to be a persistent violent felony offender and sentenced to an indeterminate term of imprisonment of twelve years to life. (S. 5, 12–13.) The court also imposed a fine of $1,000.00, as well as applicable fees and surcharges totaling $320.00. (S. 13.)

### e. Appeals

Petitioner appealed his sentence to the Appellate Division on the grounds that the trial court: (1) improperly refused to exclude certain prospective jurors; (2) failed to issue jury instructions concerning circumstantial evidence, a renunciation defense and evidence of Petitioner's prior conduct; (3) erred in discharging and replacing an injured juror; (4) improperly imposed time limits on voir dire; and (5) improperly allowed certain identification and prior-act testimony without proper hearings. (Am. Pet. 2, 15–16.) On September 22, 2009, the Appellate Division affirmed Petitioner's conviction. *Forino*, 887 N.Y.S.2d at 114. The Appellate Division determined that the verdict was not against the weight of the evidence and the trial court: (1) did not "improvidently refuse to excuse certain prospective jurors" because all the challenged jurors indicated they would be able to follow the law and none of their responses rose to the level of actual bias; (2) properly refused to issue (a) a circumstantial evidence charge because the evidence against Petitioner was both direct and circumstantial, (b) a *Molineux* charge because the evidence of defendant's guilt was overwhelming and there was no evidence that the error contributed to Petitioner's conviction, and (c) a renunciation charge because no "reasonable view of the evidence support[ed]" a finding of the affirmative defense of renunciation; (3) properly discharged and replaced the injured juror but, as a threshold matter, Petitioner's contention was unpreserved for appellate review because Petitioner did not seek to exercise a challenge against the alternate juror at trial; (4) properly set time limits for voir dire; and (5) committed harmless error when it "failed to give the defendant statutory notice of a police-arranged showup identification." *Forino*, 887 N.Y.S.2d at 115–17. On December 14, 2009, the New York Court of Appeals denied Petitioner's application for leave to appeal. *Forino*, 13 N.Y.3d at 907.

On April 21, 2010, Petitioner filed a motion pursuant to New York Criminal Procedure

Law ("NYCPL") section 440.20 to set aside his sentence on the grounds that it was unauthorized, illegally imposed or invalid as a matter of law because the sentencing court improperly directed the collection of his fine through civil judgment. (Am. Pet. 3.) On July 15, 2010, the state court rejected Petitioner's motion. Petitioner did not seek leave to appeal this decision.[6] (*Id.*)

Petitioner timely filed the instant petition for a writ of habeas corpus on December 20, 2010. (*See* Pet.) On January 10, 2011, Petitioner filed a request to stay the decision on the petition to allow him to exhaust a sixth claim for ineffective assistance of appellate counsel. (Mot. for Stay, Docket Entry No. 8.) The Court granted Petitioner's request and advised Petitioner to return to the Court with an amended petition upon the resolution of his state court error *corum nobis* proceeding. (Order dated Jan. 24, 2011.) Petitioner subsequently filed a motion for a writ of error *corum nobis* on the grounds that his counsel was ineffective for failing to raise "any federal questions of law" in Petitioner's direct appeal. (Petition for Writ of Error Corum Nobis at 13, Docket Entry No. 16-2.) Petitioner's motion for writ of error *corum nobis* was denied on December 6, 2011 because "appellant has failed to establish that he was denied the effective assistance of appellate counsel." *See People v. Forino*, 933 N.Y.S.2d 901, 901 (App. Div. 2011). The Court of Appeals subsequently denied leave to appeal on February 29, 2012. *People v. Forino*, 18 N.Y.3d 924, 924 (2012). Petitioner does not raise an ineffective assistance of counsel claim in the amended petition.

---

[6] Petitioner indicates that the basis of his section 440.20 motion was that "the portion of the sentence imposed a $1,000.00 fine, by [c]ivil judgment was imposed in violation of [NY]C.P.L. § 440.20." (Am. Pet. 3.) Petitioner does not make any related claims in his habeas petition.

## II.  Discussion

### a.  Standard of review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Hittson v. Chatman*, 576 U.S. ---, ---, 135 S. Ct. 2126, 2126 (Jun. 15, 2015); *Woods v. Donald*, 575 U.S. ---, ---, 135 S. Ct. 1372, 1374 (Mar. 30, 2015) (per curiam); *Johnson v. Williams*, 568 U.S. ---, ---, 133 S. Ct. 1088, 1091 (Feb. 20, 2013).

For the purposes of federal habeas review, "clearly established law" is defined as the "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case.  *Id.* at 412–13.  Factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### b. Prospective jurors

Petitioner claims that he was denied his right to an impartial jury because the state court improperly denied several "for cause" challenges to prospective jurors, forcing Petitioner to exercise peremptory challenges. (Am. Pet. 15; Pet. Mem. 6.)  Petitioner exercised peremptory challenges to three of the four veniremen whom Petitioner believes should have been excused "for cause," and one of the four, was seated on the jury because Petitioner had exhausted his peremptory challenges.  (Pet. Mem. 6.)  Respondent argues that Petitioner's claim is meritless because (1) denial of the challenges to the unseated jurors was not constitutional error and (2) as to the seated juror, the Appellate Division correctly upheld the denial.  (Respondent Mem. of Law in Opp'n ("Resp't Opp'n") 4–5, Docket Entry No. 12.)

To succeed on a claim that a trial court improperly denied "for cause" challenges, a petitioner must show that the trial court prevented the empaneling of an impartial jury *and* violated the petitioner's due process rights; for example where a "for cause" challenge was improperly denied and a bias juror was seated.  *See United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000) ("Nor did the District Court's ruling result in the seating of any juror who should have been dismissed for cause.  As we have recognized, that circumstance would require reversal.")  The mere loss of a peremptory challenge does not constitute a violation of a defendant's constitutional right to an impartial jury.  *See Rivera v. Illinois*, 556 U.S. 148, 152 (2009) (stating that "peremptory challenges are not of federal constitutional dimension"); *Martinez-Salazar*, 528 U.S. at 311 (explaining that, while the Supreme Court has "long recognized the role of the peremptory challenge in reinforcing a defendant's right to trial by an impartial jury," "such challenges are auxiliary"); *Brown v. Conway*, 483 F. App'x 593, 594 (2d Cir. 2012) ("The Supreme Court has repeatedly held that there is no federal constitutional

right to peremptory challenges."); *Occhione v. Capra*, No. 14-CV-3637, 2015 WL 3879534, at *18 (E.D.N.Y. June 24, 2015) ("The Court of Appeals for the Second Circuit has found that a defendant's right to exercise a peremptory challenge is a matter of state law that does not implicate federal constitutional rights."). The process of empaneling a jury is committed to the sound discretion of the trial court. *See United States v. Torres*, 128 F.3d 38, 44 (1997) (stating that the trial court has "broad discretion in its rulings" when impaneling a jury); *United States v. Maldonado-Rivera*, 922 F.2d 934, 970 (2d Cir. 1990) ("The conduct and content of voir dire are entrusted to the broad discretion of the trial judge."); *see also Fulton v. Graham*, 802 F.3d 257, 257 (2d Cir. 2015) ("A federal court is required to presume that a state court's factual findings are correct and to place on the [p]etitioner the burden of rebutting this presumption by clear and convincing evidence.").

Here, the Appellate Division's decision regarding the juror challenges was not an unreasonable application of clearly established Supreme Court precedent. *See Hittson*, 576 U.S. ---, ---, 135 S. Ct. at 2126. The Appellate Division determined that the trial court's denials of all of Petitioner's "for cause" challenges were proper. *Forino*, 887 N.Y.S.2d at 114 ("Contrary to the defendant's contentions, the trial court did not improvidently refuse to excuse certain prospective jurors for cause . . . ."). The Appellate Division found that "none of [the] responses" by the challenged jurors, including the seated juror, who was empaneled, "rose to the level of actual bias." *Id.* Petitioner offers no evidence to the contrary. During voir dire, the seated juror indicated that he was familiar with the neighborhood where the crime took place, and that it might be possible that he would recognize one of the testifying police officers by sight and that some of the names sounded familiar. (T. 252–54.) When asked if his knowledge of the neighborhood or potential familiarity with police officers would prevent him from sitting as a

fair and impartial juror, the seated juror replied, "I don't think so." (T. 254.) After indicating

that he would accept or reject police testimony as he would any other witness, defense counsel

asked the seated juror whether he would give a police officer he knew "a little more credence"

than one he did not know and the seated juror replied, "It's possible." (T. 254.) However, there

is no evidence in the record that the seated juror knew any of the police officers that testified and

therefore no evidence that he "possibl[y]" gave more credence to the testimony of any of the

witnesses based on his knowledge of or relationship with the witness, which could have

potentially made him a biased juror. Thus, there is no evidence that the trial court allowed the

empanelment of a biased juror and the loss of a peremptory challenge does not violate a

constitutional right. *See Martinez-Salazar*, 528 U.S. at 316; *Rivera*, 556 U.S. at 152.

Accordingly, Petitioner's claim based on challenges to prospective jurors is denied.

### c. Denial of jury charges

Petitioner raises three due process challenges to the jury charge. Petitioner argues that he

was denied due process and the right to a fair trial because the trial court: (1) erred in not giving

a circumstantial evidence charge, (2) erred in not giving a charge on New York's affirmative

defense of renunciation, and (3) erred in denying his request for a second *Molineux* charge. (Pet.

Mem. 9–21.)

"[F]ederal habeas corpus does not lie for errors of state law . . . . In conducting habeas

review, a federal court is limited to deciding whether a conviction violated the Constitution,

laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citations

omitted). For an erroneous state jury charge to result in a federal constitutional deprivation that

may be eligible for habeas relief, "the ailing instruction by itself [must have] so infected the

entire trial that the resulting conviction violates due process." *Blazic v. Henderson*, 900 F.2d

534, 541 (2d Cir. 1990) (alteration in original) (citing *Cupp v. Naughten*, 414 U.S. 141, 147

(1973)); *see also Gibbs v. Donnelly*, 402 F. App'x 566, 568 (2d Cir. 2010) (explaining that the Second Circuit has held that obtaining habeas relief "on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law" (citing *Davis v. Strack,* 270 F.3d 111, 123 (2d Cir. 2001))); *Norwood v. Artis*, 487 F. Supp. 2d 321, 332–34 (W.D.N.Y. 2007) ("[T]he trial court's failure to issue a properly requested jury charge does not, standing alone, violate petitioner's right to due process." (first citing *Blazic*, 900 F.2d at 541; and then citing *Cupp*, 414 U.S. at 147)).  The Court considers each challenged jury charge separately.

### i.    Circumstantial evidence jury charge

Petitioner argues that there "was no evidence whatsoever of any intent to commit a crime" and no direct evidence of Petitioner's attempted entry, and that the "only [possible] inference" was that Petitioner committed the lesser crime of criminal trespass.  (Pet. Mem. 11–12.)  Respondent argues that (1) Petitioner fails to allege a violation of a federal constitutional right and (2) Petitioner's state law claim fails because (a) the lack of direct evidence as to only one element of a crime, such as intent, does not require a circumstantial evidence charge and (b) the People presented direct evidence of the attempted burglary.  (Resp't Opp'n 9–11.)

"Under New York law, in criminal cases which depend entirely upon circumstantial evidence[,]. . . the facts from which the inference of the defendant's guilt is drawn must be established with certainty — they must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis."  *Floyd v. Miller*, No. 01-CV-2097, 2003 WL 21845995, at *7 (E.D.N.Y. Aug. 6, 2003) (citing *People v. Barnes*, 50 N.Y.2d 375, 379–80 (1980)); *see People v. Carter*, 948 N.Y.S.2d 608, 611 (App. Div. 2012) ("Whenever a case relies

wholly on circumstantial evidence to establish all elements of the charge, the jury should be instructed, in substance, that the evidence must establish guilt to a moral certainty." (internal citations and quotation marks omitted)); *see also Maldonado v. Scully*, 86 F.3d 32, 35 n.5 (2d Cir. 1996) ("Whether the expression used is 'beyond a reasonable doubt,' or 'to a moral certainty,' is immaterial, for they are synonymous . . . ." (citation omitted)); *Malave v. Smith*, 559 F. Supp. 2d 264, 275 (E.D.N.Y. 2008) (stating that a "contention that [a charge based solely on circumstantial evidence] resulted in a heightened burden of proof is simply incorrect" (citing *Barnes*, 50 N.Y.2d at 380)).

However, in a case that includes both direct and circumstantial evidence, the court is not required to give the circumstantial evidence jury instruction. *See Barnes*, 50 N.Y.2d at 380 (holding that the relevant "moral certainty" standard "does not apply to a situation where, as here, both direct and circumstantial evidence are employed to demonstrate a defendant's culpability"); *see also People v. Roldan*, 88 N.Y.2d 826, 827 (1996) (finding that because the case "involves direct evidence" it "does not qualify for the circumstantial evidence instruction"); *People v. Rodney*, 912 N.Y.S.2d 340, 343 (App. Div. 2010) ("There was both direct and circumstantial evidence of defendant's guilt and, thus, . . . he was not entitled to a circumstantial evidence charge." (citations omitted)); *People v. Iverson*, 866 N.Y.S.2d 366, 367 (App. Div. 2008) ("A court is required to honor a defendant's request for this [circumstantial evidence] charge only where the evidence of his participation in criminal activity is 'wholly circumstantial.'" (quoting *People v. Guidice*, 83 N.Y.2d 630, 636 (1994))).

Here, Petitioner was not entitled to a circumstantial evidence instruction, and therefore cannot show that his federal due process rights were violated. At trial, the People introduced direct evidence of Petitioner's guilt, and as a result, the trial court was not required to instruct the

jury on circumstantial evidence. *See Barnes*, 50 N.Y.2d at 380. Specifically, the responding

police officer testified that he observed Petitioner ring the doorbell of the house he was

attempting to burglarize, put on gloves, open the gate to the side yard and attempt to open the

locked sliding door on the side of the house. (T. 434–37, 449, 484–85.) On appeal, the

Appellate Division held that the trial court "properly declined to provide the jury with a

circumstantial evidence charge since the evidence was both direct and circumstantial." *Forino*,

887 N.Y.S.2d at 114. Because the state court's decision did not violate state law and, more

importantly, did not violate Petitioner's due process rights, Petitioner cannot demonstrate that the

absence of a circumstantial evidence instruction is a basis for habeas relief. *See Gibbs*, 402 F.

App'x at 568. The Court therefore denies Petitioner's claim based on the circumstantial

evidence jury charge.[7]

### ii. Renunciation defense jury charge

Petitioner argues that the trial court violated his due process rights by failing to charge

the jury on New York's affirmative defense of renunciation, which allows the jury to consider

whether the crime had been abandoned "under circumstances manifesting a voluntary and

complete renunciation of his criminal purpose." (Pet. Mem. 17–21 (citing N.Y. Penal Law

§ 40.10(3)).) Respondent argues that (1) Petitioner fails to allege a violation of a federal

constitutional right and (2) Petitioner's state law claim is without merit because a renunciation

defense jury charge is only proper where (a) the defense is supported by a "reasonable view of

the evidence" and (b) a jury could reasonably have concluded that the defendant proved the

---

[7] Petitioner also asserts that the failure to give the circumstantial evidence charge
violated his Sixth Amendment right. However, he fails to allege how the failure to issue the
charge rose to the level of a Sixth Amendment violation other than his claim that the charge
would have helped the jury perform its "complex analytical function." (Pet. Mem. 12.)
Petitioner's claim is best addressed as a due process violation.

defense by a preponderance of the evidence, neither of which is the case here. (Resp't Opp'n 8–9, 14–15.)

New York law requires the court to charge the jury on an affirmative defense only when the jury "could reasonably conclude that defendant had proven the existence of the defense by a preponderance of the credible evidence." *People v. Dolan*, 858 N.Y.S.2d 490, 490 (App. Div. 2008); *see also People v. Gonzalez*, 22 N.Y.3d 539, 545 (2014) ("A defendant is entitled to a jury charge . . . where the evidence, viewed in the light most favorable to the defendant, is sufficient for the jury to find by a preponderance of the evidence that the elements of the affirmative defense are satisfied."); *People v. Miaram*, 948 N.Y.S.2d 115, 115 (App. Div. 2012) (holding that a defendant was not entitled to a jury instruction on an affirmative defense because there was not sufficient evidence for the jury to find by a preponderance of the evidence that all the elements of the defense were satisfied). Under New York law, a renunciation is not "voluntary and complete" if it is motivated by outside circumstances that render the crime more difficult to complete. N.Y. Penal Law § 40.10(5); *see People v. Taylor*, 80 N.Y.2d 1, 13 (1992).

Here, the Appellate Division found that the trial court properly declined to charge the jury on this defense because "no reasonable view of the evidence supports a finding of the affirmative defense of renunciation." *Forino*, 887 N.Y.S.2d at 114; *see also Dolan*, 858 N.Y.S.2d at 493 (holding that the defendant was not entitled to a renunciation instruction where the defendant "fled the scene out of fear or apprehension"). This finding is consistent with state law since Petitioner did not renounce his criminal effort but rather was hindered by the locked door. (T. 695; *see Taylor*, 80 N.Y.2d at 13 ("the abandonment cannot be motivated in whole or in part by a belief that circumstances exist that increase the probability of detection or apprehension or make more difficult the completion of the crime." (citing N.Y. Penal Law

§ 40.10[5])).)  Thus, Petitioner has not demonstrated that the absence of this jury charge rose to a deprivation of his due process rights.

### iii. *Molineux* **charge**

Petitioner claims that the trial court improperly denied his request for a second charge concerning evidence of Petitioner's conduct prior to his arrival at the house he attempted to burglarize.  (Pet. Mem. 12–17.)  Respondent argues that (1) Petitioner fails to allege a violation of a federal constitutional right and (2) Petitioner's state law claim is without merit because the failure to administer the charge was harmless in light of the "overwhelming evidence of [Petitioner's] guilt."  (Resp't Opp'n 8–9, 12–13.)

Under New York law, while evidence of uncharged criminal conduct is inadmissible if offered to show only a defendant's propensity or predisposition to commit the crime charged, such evidence may be admitted for other purposes, such as to establish motive, opportunity, intent, preparation, identity or absence of mistake.  *See People v. Molineux*, 168 N.Y. 264, 293 (1901); *People v. Cortez*, 22 N.Y.3d 1061, 1070 (2014) ("[T]he *Molineux* doctrine, at its core, forbids an inference of guilt from evidence probative of no more than predisposition to a kind of behavior.").  When such evidence is admitted for appropriate reasons, New York law requires that the trial court give a cautionary instruction as to its limited use, both when the evidence is admitted and again as part of its final charge.  *See People v. Williams*, 50 N.Y.2d 996, 998 (1980) (explaining that, in admitting evidence of drug sales for which the defendant was not charged but that showed the means of distribution, the trial court should "caution the jury concerning the limited purpose for which [the evidence] is being admitted").

Here, at Petitioner's request, (T. 276–77), the trial court gave the following cautionary instruction to the jury during the prosecutor's opening statement:

> The indictment only concerns the attempted crime of burglary in the
> second degree located at 2568 Foxdale Road in Oceanside. That's
> all we're concerned about. No other prior — no other alleged acts
> that the defendant might have done or didn't do. It just pertains to
> this particular location.

(T. 281.) Petitioner also requested, prior to summation, that the trial court include in its final jury charge a *Molineux* limiting instruction with respect to the eyewitness' testimony that she had observed Petitioner wandering into the backyards of several homes, peering into windows, opening screen doors and ringing doorbells. (T. 695–97.) The trial court denied Petitioner's application. (T. 697.) On appeal, the Appellate Division found that the omission of a *Molineux* charge from the jury instruction did "not warrant reversal since the evidence of [Petitioner's] guilt was overwhelming" and the trial court's earlier instruction meant that "there was no significant probability that the error contributed to the defendant's conviction." *Forino*, 887 N.Y.S.2d at 114.

Petitioner has not demonstrated that the failure to include an additional *Molineux* instruction in the jury charge "so infected the entire trial that the resulting conviction violates due process." *See Blazic*, 900 F.2d at 541; *see also People v. Mendez*, 960 N.Y.S.2d 575, 576 (App. Div. 2013) (finding that the trial court did not err by merely "remind[ing] the jury of the 'cautionary instruction' it had previously given" during the jury charge, and concluding that the jury had been "sufficiently cautioned . . . concerning the limited purpose for which the [evidence] had been admitted"). As the Appellate Division explained in finding that the omission of this charge was harmless, the evidence of Petitioner's guilt was overwhelming. Accordingly, Petitioner has not established that the trial court's decision resulted in a violation of his due process rights sufficient to warrant habeas relief.

Petitioner's claims based on the trial court's jury charges are therefore denied.

####    d.    Dismissal and replacement of injured juror

Petitioner argues that the trial court erred in replacing the juror who was injured in a car accident on the first day of trial. (Pet. Mem. 22–27.) Petitioner argues that the trial court denied him his right to a fair trial because the trial court: (1) abused its discretion in replacing the injured juror without conducting a proper inquiry, and (2) replaced the injured juror with an alternate juror who had been improperly selected. (Pet. Mem. 22-27.)

####    i.    Dismissal of the injured juror

Petitioner argues that the trial court failed to conduct the proper inquiry in dismissing the injured juror as required by NYCPL section 270.35(2)(a). (Pet. Mem. 22–24.) Respondent argues that (1) Petitioner cites no federal constitutional violation warranting habeas review, and (2) Petitioner's state law claim is without merit because the trial court conducted a "reasonably thorough inquiry" as required by NYCPL section 270.35(2)(a). (Resp't Opp'n 18–20.)

Under New York law, a trial court "in the exercise of its discretion, may replace [an absent] juror with an alternate," provided the court "has conducted a reasonably thorough inquiry into an absent juror's whereabouts and possible time of return" and has "determined that the juror will not appear within two hours after the time the trial is scheduled to resume." *People v. Jeanty*, 94 N.Y.2d 507, 511 (2000) (citing N.Y. Crim. Proc. Law § 270.35 (2)(a)); *see People v. Ballard*, 858 N.Y.S.2d 769, 769 (App. Div. 2008) (holding that the trial court had "providently exercised its discretion in replacing a sworn juror after learning that the juror [] had called the court's clerk" to state he was ill, because the trial court made a "reasonably thorough inquiry into the juror's unavailability, afforded the parties the opportunity to be heard, and placed the facts and reasons for its determination on the record" (citations omitted)).

Courts in this Circuit have held that a trial court's dismissal of an unavailable juror

involves only an application of state law and alone does not present a federal constitutional question cognizable on habeas review. *See, e.g.*, *Davis v. Woods*, No. 05-CV-03414, 2010 WL 3747669, at *14 (E.D.N.Y. Sept. 17, 2010) ("[P]etitioner's claim regarding the replacement of [the juror] does not implicate a constitutional concern."); *Wheeler v. Phillips*, No. 05-CV-4399, 2006 WL 2357973, at *6 (E.D.N.Y. Aug. 15, 2006) (holding that dismissal and replacement of jurors with alternates due to jurors' unavailability did not raise a constitutional issue because, "[f]or example, there is no allegation that the replacement was biased, or that some constitutional infirmity ensued as a result of the court's decision"); *Hughes v. Phillips*, 457 F. Supp. 2d 343, 368 (S.D.N.Y. 2006) (dismissal of a juror unable to serve due to illness does not present a claim of federal constitutional dimension).

Here, the Appellate Division found that the "trial court providently exercised its discretion in discharging [the injured] juror on the second day of trial." *Forino*, 887 N.Y.S.2d at 114. Because Petitioner identifies no reason that the trial court's dismissal of the injured juror violates federal law, Petitioner's claim is denied.[8]

### ii. Selection of alternative juror

Petitioner argues that the alternate juror was improperly selected because Petitioner's trial counsel's "final round" of voir dire was "interrupted by the Court," which Petitioner alleges prevented his counsel from "inquiring as to [the jurors] impartiality and unequivocality." (Pet. Mem. 26.) Respondent argues that Petitioner's challenge is procedurally barred as well as

---

[8] Although Petitioner does not style his claim as such, any possible Sixth Amendment claim by Petitioner for an improper jury strike is meritless because Petitioner is not alleging that the juror was dismissed for unconstitutional reasons or that his Sixth Amendment right to an impartial jury was otherwise violated by excusing the injured juror. *See Berghuis v. Smith*, 599 U.S. 314, 319 (2010) (The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community. (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975))).

substantively deficient since the alternate juror was selected properly and without objection as an alternate juror at voir dire. (Resp't Opp'n 19–21.)

The Appellate Division found that Petitioner's argument regarding the selection of the alternate juror was "unpreserved for appellate review, since [Petitioner] did not seek to exercise either a for[-]cause or a peremptory challenge against [the alternate juror]." *Forino*, 887 N.Y.S.2d at 114. The Appellate Division nevertheless stated that, despite the failure to preserve the challenge, "the trial court providently exercised its discretion in setting time limits on each attorney's voir dire of prospective jurors, and defense counsel was provided a fair opportunity to ask relevant and material questions." *Id.*

Federal courts are generally not permitted to "review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)); *Estelle*, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). A state-law ground is deemed "adequate" if the rule "is firmly established and regularly followed by the state in question." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)).

It is well-settled that New York's contemporaneous objection rule is an adequate and independent ground that bars federal habeas review. *Kozlowski v. Hulihan*, 511 F. App'x 21, 25 (2d Cir. 2013) ("[T]he contemporaneous objection rule provides an independent state-law ground for barring federal habeas review."); *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) ("[W]e have held repeatedly that the contemporaneous objection rule is a firmly established and

regularly followed New York procedural rule."); *Garcia*, 188 F.3d at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules."); *Wright v. Lee*, No. 12-CV-6140, 2013 WL 1668266, at *2 (E.D.N.Y. April 17, 2013) ("It is well settled that New York's contemporaneous objection rule . . . is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review.").

"[W]hen a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996)); *Edwards v. Rock*, No. 09-CV-1387, 2013 WL 80176, at *10 (E.D.N.Y. Jan. 7, 2013); *Young v. New York*, No. 11-CV-0110, 2012 WL 6644993, at *12 (E.D.N.Y. Dec. 20, 2012) ("When a state court relies on an independent and adequate state law ground — such as, in this case, failure to preserve the issue for appeal — federal habeas review is foreclosed. This is true even if the state court rules in the alternative on the merits of petitioner's claims." (citations omitted)).

Here, Petitioner's claim is procedurally barred because he failed to challenge the alternate juror at the time she was selected, and Petitioner's failure to object contemporaneously was an adequate and independent state law ground upon which the Appellate Division rested its decision. *Kozlowski*, 511 F. App'x at 25. In addition to specifically stating that Petitioner's claim was "unpreserved for appellate review," the Appellate Division also stated that "the trial court providently exercised its discretion in setting time limits on each attorney's voir dire of prospective jurors, and defense counsel was provided a fair opportunity to ask relevant and material questions." *Forino*, 887 N.Y.S.2d at 114. However, the fact that the Appellate Division proceeded to evaluate the merits of Petitioner's claim does not eliminate the procedural bar. *See Green*, 414 F.3d at 294 (holding that where a claim is procedurally defaulted but the court

continues to rule on the merits, the procedural default is an adequate and independent ground for the decision).  Accordingly, despite the alternative holding by the Appellate Division, Petitioner's claim is procedurally barred.

### e.    Failure to hold hearings

Petitioner argues that the trial court violated his right to an impartial jury by failing to hold (1) a hearing regarding an eyewitness identification, of which Petitioner did not have notice, and (2) a hearing before admitting testimony regarding Petitioner's behavior prior to the attempted burglary.  (Pet. Mem. 28.)

### i.    Eyewitness identification hearing

Petitioner argues that the trial court violated his right to an impartial jury by failing to hold a hearing after it became apparent that the government had failed to give Petitioner notice of an eyewitness identification.  (Pet. Mem. 28–30.)  Respondent argues that (1) Petitioner's claim fails to state a violation of a federal constitutional right, (2) the trial court conducted sufficient inquiries, and (3) any error was harmless.  (Resp't Opp'n 22–25.)

Petitioner does not possess a guaranteed right to advance notice of identification testimony under the Constitution.  *See Roberts v. Scully*, 875 F. Supp. 182, 191 (S.D.N.Y.1995) (finding that a violation of NYCPL § 710.30 does not "reflect a claim of constitutional magnitude") *aff'd*, 71 F.3d 406, 406 (2d Cir. 1995).  NYCPL section 710.30(1) requires advance notification of a witness' identification testimony.  The statute reads in relevant part:

> Whenever the people intend to offer at a trial . . . testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.

N.Y. Crim. Proc. Law § 710.30(1). However, federal courts have consistently held that such statutory notification is a matter of state law and not reviewable on a petition for a writ of habeas corpus. *See Brown v. Woods*, No. 07-CV-10391, 2010 WL 2605744, at *4 (S.D.N.Y. June 29, 2010) (holding that a claim alleging state failed to sufficiently notify petitioner pursuant to NYCPL section 710.30 "raises solely an issue of state law"); *Dotson v. Ercole*, No. 06-CV-7823, 2009 WL 1615997, at *2 (S.D.N.Y. June 9, 2009) ("The Constitution does not guarantee a right to advance notice of identification testimony."); *Espinal v. Duncan*. No. 00-CV-4844, 2000 WL 1774960, at *3 (S.D.N.Y. Dec. 4, 2000) (finding a claim alleging non-compliance with section 710.30 is state law error not reviewable by federal habeas court); *Williams v. Connolly*, No. 10-CV-3075, 2013 WL 5692682 at *7 (E.D.N.Y. Sept. 30, 2013) (same); *see also Estelle*, 502 U.S. at 67–68 (holding that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Thus, any possible error by the state court in allowing the identification evidence without a hearing does not give rise to a constitutional violation. *See Estelle*, 502 U.S. at 67–68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also Dotson v. Ercole*, No. 06-CV-7823, 2009 WL 1615997, at *2 (S.D.N.Y. June 9, 2009) ("Even if the admission of the testimony at issue did contravene [NY]CPL § 710.30(1), such an admission does not constitute a constitutional violation.").

### ii. Prior act hearing

Petitioner argues that the trial court should have held a hearing before admitting testimony related to Petitioner's behavior prior to the actual attempted burglary. (Am. Pet. 16; Pet. Mem. 12–16, 28.) Respondent argues that (1) Petitioner fails to state a violation of a federal

constitutional right, (2) Petitioner had the equivalent of a hearing and failed to raise additional information he would have put forth at any hearing, and (3) any error in allowing the testimony was harmless. (Resp't Opp'n 23–29.)

An error of state law that rises to the level of a constitutional violation may be corrected on habeas review, but only if it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *see also Lyons v. Girdich*, No. 02-CV-3117, 2003 WL 22956991, at *10 (E.D.N.Y. Oct. 15, 2003). "For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial." *Lyons*, 2003 WL 22956991, at *11 (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)); *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 73 (2d Cir. 2011) ("Such unfairness will only result where '[T]he erroneously admitted evidence, viewed 'objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been crucial, critical, highly significant.'" (alternation in the original) (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985))).

Under New York law, the government must obtain advance judicial approval before seeking to admit evidence of a defendant's other crimes or bad acts evidence. *See Ventimiglia*, 52 N.Y.2d at 350. A *Ventimiglia* hearing does not derive from federal constitutional principles, and therefore, failure to hold such a hearing is not a violation of the United States Constitution or federal law. *See Valencia v. Brown*, No. 08-CV-0029, 2010 WL 8358087, at *7 (S.D.N.Y. Oct. 25, 2010); *Johnson v. Mazzuca*, No. 04-CV-5246, 2006 WL 2376383 at *8 n.2 (E.D.N.Y. Aug. 16, 2006) (holding that a failure to conduct *Ventimiglia* hearing "not cognizable under habeas

review" because "the right to a *Ventimiglia* hearing is a matter of state law"); *see also Pena v. Fisher*, No. 00-CV-5985, 2003 WL 1990331, at *10 (S.D.N.Y. Apr. 28, 2003).

Under New York State law, evidence of prior acts that is "inextricably interwoven" with the underlying crime is admissible. *See, e.g., People v. Vails*, 43 N.Y.2d 364, 368–69 (1977) (finding that the testimony of an undercover police officer as to conversations with defendant concerning prior narcotics transaction was properly admitted because the testimony was inextricably interwoven with the crime charged); *see also People v. Garing*, 831 N.Y.S.2d 255, 255 (App. Div. 2007) (admitting evidence regarding other uncharged crimes when the testimony was inextricably interwoven with the otherwise admissible testimony). Similarly, in the Second Circuit, "evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show a defendant's criminal propensity," *United States v. Harris*, 733 F.2d 994, 1006 (2d Cir. 1984), provided it is "relevant to some disputed issue in the trial" and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence, *United States v. Figueroa*, 618 F.2d 934, 939 (2d Cir. 1980) (citations omitted). Moreover, prior crime evidence is admissible if "it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000). However, the United States Supreme Court has not determined whether admission of prior crimes evidence rises to the level of a due process violation. *See Estelle*, 502 U.S. at 75 n.5; *see also Williams v. Jacobson*, No. 15-CV-5319, 2016 WL 4154700, at *20 (S.D.N.Y. Aug. 5, 2016 ("there is no clear Supreme Court precedent holding that the admission of propensity evidence (even if prejudicial) is unconstitutional" (quoting *Estelle*, 502 U.S. at 75 n.5)).

Here, Petitioner alleges that the eyewitness testimony regarding his conduct prior to the attempted burglary — trying doors, looking into windows and going into the yards of other neighboring houses — was improperly admitted without a hearing. (Pet. Mem. 28.) However, Petitioner's argument is unavailing because Petitioner's right to a hearing is only provided by state law and the evidence related to Petitioner's conduct immediately before the attempted burglary is inextricably intertwined with the evidence of the crime and the eyewitness' decision to call the police and follow Petitioner around the neighborhood. *See Valencia*, 2010 WL 8358087, at *7; *see, e.g., Vails*, 43 N.Y.2d at 368–69; *Garing*, 831 N.Y.S.2d at 255. Thus, the evidence was properly admitted under state law which is consistent with federal law in the Second Circuit and not contrary to any established Supreme Court precedent. *See Estelle*, 502 U.S. at 75 n.5. The Court finds that the introduction of the evidence of Petitioner's conduct did not deny Petitioner a fundamentally fair trial. Therefore, Petitioner's argument that the trial court denied him a preclusion hearing is not cognizable on habeas review.

### f. Legal sufficiency of the evidence and weight of the evidence

Petitioner argues that he was denied due process because the jury's guilty verdict was legally insufficient and against the weight of the evidence. (Pet. Mem. 38–44.) Petitioner presented these arguments to the Appellate Division, which found that the evidence was "legally sufficient to establish the defendant's guilt beyond a reasonable doubt" and determined that "the verdict of guilt was not against the weight of the evidence." *Forino*, 887 N.Y.S.2d at 114. The Court separately considers each argument below.

### i. Sufficiency of the evidence

Petitioner claims that the evidence was insufficient to support a finding of attempted burglary because there was insufficient evidence to support an inference that Petitioner intended

to commit a crime once inside the house.  (Pet. 38–40.)  Respondent argues that Petitioner's legal sufficiency claim is procedurally barred since it is unexhausted and substantively deficient because "there is no other reasonable inference from the evidence . . . than that he intended to commit a crime once inside the house."  (Resp't Opp'n 30–33.)

In reviewing an insufficiency of the evidence claim a court must consider whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Cavazos v. Smith*, 565 U.S. ---, ---, 132 S. Ct. 2, 6 (Oct. 31, 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Mi Sun Cho*, 713 F.3d 716, 720 (2d Cir. 2013) (per curiam) ("[T]he evidence must be viewed in the light most favorable to the government, with all reasonable inferences drawn in its favor.").  A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden."  *Mi Sun Cho*, 713 F.3d at 720; *Fama v. Comm'r. of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000).  "A habeas petitioner 'is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'"  *McDaniel v. Brown*, 558 U.S. 120, 121 (2010) (citing *Jackson*, 443 U.S. at 324); *Arena v. Kaplan*, 952 F. Supp. 2d 468, 479 (E.D.N.Y. 2013); *Prince v. Lee*, No. 10-CV-5306, 2011 WL 1533486, at *4 (E.D.N.Y. Apr. 22, 2011).  "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"  *Cavazos*, 565 U.S. at ---, 132 S. Ct. at 3 (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *Mendez v. Connelly*, No. 09-CV-234, 2012 WL 1567184, at *1–2 (E.D.N.Y. May 2, 2012).  Furthermore, a court reviewing a habeas petition

must apply this standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Langston v. Smith*, 630 F.3d 310, 314 (2d Cir. 2011) (quoting *Jackson*, 443 U.S. at 324 n.16); *see also Dixon v. Miller*, 293 F.3d 74, 79 (2d Cir. 2002) ("The state court's interpretation of the proof required must be applied on collateral review to prevent a violation of the Due Process Clause of the Fourteenth Amendment, which guards against convicting a defendant without proof beyond a reasonable doubt on each element of his crime."); *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999) ("A federal court must look to state law to determine the elements of the crime.").

Petitioner was convicted of attempted burglary in the second degree, pursuant New York Penal Law sections 140.25 and 110.00. (Am. Pet. 1); *Forino*, 887 N.Y.S. 2d at 115. Under New York Penal Law section 140.25, a defendant is "guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling[,]" and under New York Penal Law section 110.00, a defendant is "guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law §§ 140.25, 110.00.

Petitioner argues that the "circumstances of this case belie any inference that he intended to commit a crime in the house," as the government did not present evidence of forced entry, vandalism, or property damage. (Pet. Mem. 40.) Petitioner further argues that the government never alleged that Petitioner used "burglar's tools" or had stolen property on his person. (*Id.*) Respondent argues that Petitioner's intent to commit a crime inside the premises may be inferred from his conduct and the surrounding circumstances, for example, Petitioner was on the property

without authorization and was seen putting on gloves before entering the yard and tugging on the doors of the house.  (Resp't Opp'n 33–34.)

The evidence was sufficient to establish that Petitioner was attempting to gain entry to a house in order to commit a crime once inside.  The People established that Petitioner did not have permission to be on the property.  An eyewitness testified that she saw Petitioner in her neighbor's backyard and observed him attempting to open doors of other houses in the neighborhood, peering through windows and going into backyards.  (T. 313–317.)  The responding officer watched Petitioner put on a pair of gloves, open the gate to the side yard of a house, enter the yard, open a screen door and tug at the interior glass door.  (T. 434–37, 449, 484–85.)  Based on this evidence, a rational jury could have concluded that Petitioner intended to commit a crime if he gained access to the house.  *See e.g. People v. Gordon*, 23 N.Y.3d 643, 651–53 (finding a jury's verdict legally sufficient where defendant challenged evidence of the required intent).  Petitioner's defense that he did not intend to commit a crime inside the home was apparently rejected by the jury.  Moreover, in reviewing the petition, the Court must assume that all conflicting inferences were resolved in favor of the prosecution.  *Cavazos*, 565 U.S. at ---, 132 S. Ct. at 6 ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" (quoting *Jackson*, 443 U.S. at 326)); *Policano v. Herbert*, 507 F.3d 111, 117 (2d Cir. 2007) (same).  Viewed in the light most favorable to the prosecution, the evidence supporting Petitioner's intent to commit a crime once inside the house is sufficient, and the state court's decision regarding the sufficiency of the evidence was not contrary to, or an unreasonable application of, clearly established federal law.

### ii. Weight of the evidence

Petitioner also argues that his conviction was against the weight of the evidence. (Pet. Mem. 41–44.) Respondent argues that (1) Petitioner's weight-of-the-evidence claim fails to identify a violation of a federal constitutional right and (2) the weight-of-the-evidence challenge has no merit because "[a]ny other verdict would have been unreasonable." (Resp't Opp'n 30, 34–35.)

Petitioner's weight-of-the-evidence argument is not cognizable. Unlike Petitioner's sufficiency-of-the-evidence claim, which is based on the due process clause of the Fourteenth Amendment, a weight-of-the-evidence claim is a state-law claim grounded in NYCPL section 470.15(5). *McKinnon*, 422 F. App'x at 75 ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus, and as a matter of federal constitutional law a jury's verdict may only be overturned if the evidence is insufficient to permit any rational juror to find guilt beyond a reasonable doubt."); *Arevalo v. Artus*, 104 F. Supp. 3d 257, 270 (E.D.N.Y. 2015) (A challenge that "a guilty verdict was against the weight of the evidence is not cognizable on habeas review because it is a 'pure state law claim' grounded in [NYCPL] § 470.15(5)" (citing *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001))); *Taylor v. Connelly*, 18 F. Supp. 3d 242, 267 (E.D.N.Y. 2014); *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 372 (E.D.N.Y. 2013) (citing *McKinnon*, 422 F. App'x at 75). Petitioner is therefore not entitled to federal habeas corpus relief on this ground. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (noting that habeas corpus review is not available where there is simply an alleged error of state law).

### III. Conclusion

For the foregoing reasons, the Court denies Petitioner's application for a writ of habeas corpus. Because Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability shall be issued. 28 U.S.C. § 2253; *see also Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112–13 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to close the case.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: December 19, 2016
       Brooklyn, New York